**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Shalimar Acosta, individually and on behalf of all others similarly situated,<br>Plaintiff, | 1:22-cv-03974 |
| - against - | Class Action Complaint |
| Hopper (USA), Inc.,<br>Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Hopper (USA), Inc. ("Defendant") markets and sells travel savings products and services from its eponymous website and mobile application such as "Price Freeze."

2. The in-app representations encourage prospective customers to rely on Price Freeze to "Freeze prices, book when you're ready" because "Price Freeze helps you stay safe from price increases while you plan your trip."

3. Then, "Once you've found a price you like, look for the Price Freeze button and pay a small fee to lock in the price."

Freeze prices, book when you're ready
Price Freeze helps you stay safe from price increases while you plan your trip. Here's how it works:

Plan your trip
Search for flights, hotels, and car rentals.

Freeze the price
Once you've found a price you like, look for the Price Freeze button and pay a small fee to lock in the price.

4. The description of Price Freeze tells customers it fully protects them from any price increases for a provided length of time.

5. The benefits of Price Freeze are described to potential travelers as allowing them to "Take your time [.] Finalize plans or wait for the next paycheck to come in. Once you've frozen the price, you can relax knowing you locked in your price."

**Take your time**

Finalize plans or wait for the next paycheck to come in. Once you've frozen the price, you can relax knowing you locked in your price.

**Book (or don't book!) your trip**

Come back anytime before your Price Freeze expires to book your trip. If the price goes up, Hopper covers the price increase. If the price goes down, you just pay the new, low price. Or, if you no longer want to book your trip, no worries!

6. Travelers are assured that with Price Freeze, they can:

> **Book (or don't book!) your trip**
> Come back anytime before your Price Freeze expires to book your trip. If the price goes up, Hopper covers the price increase. If the price goes down, you just pay the new, low price. Or, if you no longer want to book your trip, no worries!

7. Defendant's website and mobile app offers options to begin the trip planning process.

Hotels
Flights
Cars
Homes

8. Clicking on the airplane icon opens a flight search.



9. Once users select the number of travelers and provide the departure and arrival airports, a new page opens.

10. Here, users can select between "Round trip" or "One way," and choose their flight date(s).

11. Dates are displayed in a color-coded calendar, where green means the lowest prices, yellow a bit higher, orange even higher, and red the highest.

12. Clicking on any colored dot will change the display to a zoomed-in month view.

13. Clicking on a particular date allows users to select it and move forward in the trip planning process.

14. The next page provides flight pricing, suggestions on when to book, the option to watch the selected trip, and the option to hold the current fare for a fee, known as "Price Freeze."



15. Listed are the itinerary and Price Freeze details, "Current Price," "Today's Deposit," an informational blurb, and a link to "More Information."

16. When travelers click on "Price Freeze," they are told this will "Freeze [the price] for 20 days" because "If the price increases, you'll pay the price you see now and if the price goes down, you'll pay the lower price!"



17. According to the Cambridge Dictionary, a price freeze is a "situation in which prices, or the price of a particular product, are fixed at a particular level and no increases are allowed."

18. Despite the marketing as a price assurance tool that protects travelers from price increases, Hopper's Price Freeze fails to cover the full price difference when the price of a flight increases beyond a pre-determined amount.

19. The only way potential travelers can learn this is by clicking the circled "i" next to "Buy now, pay later" or "More Information" under the other Price Freeze description.

20. Either of these options pulls up a "How Price Freeze Works" info page for potential travelers who are "Worried this price will go up? [or] Need more time to decide?," allowing them to "Freeze the price right where it's at!"

21. For the fare in question, travelers can "Freeze the flight price for US$67.00" and will "have 20 days to apply [their] deposit towards purchase of the frozen flight before it expires."

22. However, "If the flight price increases, Hopper will cover you up to [only] US$100.00/traveler in savings."

23. The fine print terms euphemistically describe this limitation as a "Service Cap."

> At the time of exercise, when the current ticket price is higher than the price indicated in your Price Freeze [] You will only pay the frozen price less your Fee, in accordance with Section 6 and, if applicable, any price increase exceeding the Service Cap.

4. **Exercise.** In order to purchase the frozen flight during the applicable Exercise Window, you may select the Price Freeze on the Home screen in the Hopper mobile app. At the time of exercise, when the current ticket price is higher than the price indicated in your Price Freeze. You will only pay the frozen price less your Fee, in accordance with Section 6 and, if applicable, any price increase exceeding the Service Cap. Following purchase of the specified ticket(s), any refunds, cancellations

24. Additional fine print explains that the "Service Cap" is the "maximum amount that Hopper will pay" in connection with the Price Freeze, and astonishingly, that "[T]he Service Cap will [only] be made clear and will be stated on the confirmation email," after users purchased the Price Freeze.

25. Should "the price of [the] Price Freeze flight [] increase[d] more than the Service Cap amount, [the] stored payment method will be charged the current airline ticket price less the Service Cap."

5. **Service Cap.** Price Freeze may be subject to a maximum amount that Hopper will pay for (**Service Cap**). The Service Cap will be made clear and will be stated on the confirmation email. Hopper will only pay for the amount of a price increase up to the stated Service Cap amount. If the price of your Price Freeze flight has increased more than the Service Cap amount, your stored payment method will be charged the current airline ticket price less the Service Cap. If there is no stated Service Cap, then Hopper will pay the full amount of any price increase upon exercise.

26. Nowhere throughout the flight selection process are travelers put on notice of the limitations of the Price Freeze.

27. Users of Hopper have complained about the opaque and non-disclosed limitations of the Price Freeze on websites including TripAdvisor and the Better Business Bureau ("BBB").


Coolimprov
Durham, North...

Level 1 Contributor

2 posts
3 reviews
1 helpful vote

12. **Re: Has anyone else had issues with Hopper's "price freeze"?** Save

Aug 15, 2021, 10:32 PM

I was recently burned by hopper. I found a flight that appeared to be a good deal and fell for the "price freeze" scam. I put down my deposit and I thought that I had seven days to purchase my tickets at the agreed price. I understood that the tickets could increase in cost but felt comforted by the Hopper "we got your back" guarantee. Well they only give 100 dollars. Toward the increase, the rest is on you. Well my tickets went up almost three hundred dollars. I can't afford that so I lost my deposit. I played right into the scam. Avoid the bunny like the plague.

**Complaint Type:** Advertising/Sales Issues **Status:**  

07/11/2021

On July 8th I bought a ticket on Price Freeze from Hopper. Within the price freeze period I came to find out that Hopper isnt actually even freezing the price. If I would have known that I would have bought my ticket at the time that I saw it, but with the promise of paying just the deposit and then the frozen price later I thought it was a great deal. As it turns out, Hopper will pay for only $100 of price increase, but with an international ticket thats nothing. Instead of the $587 I froze my ticket at, Hopper wants me to pay nearly $1,000 even when the airline I bought the ticket from is selling it for $606. The claim of Price Freeze is false, and needs to be changed.

03/29/2022

TOTAL SCAM - FRAUD - FALSE AND DECEPTIVE ADVERTISING Less than a week ago, I paid Hopper $68 for a price freeze on a ****** Airlines flight. When I just now, attempted to pay the balance and book the flight 5 days in advance, Hopper's price had increased SEVERAL HUNDRED DOLLARS. In order the complete the booking, I was required to pay Hopper several hundred dollars more, while Hopper was saying they SAVED ME $100!In an immediate complaint with Hopper in a Chat Line, I booked my original flight with ****** at the exact same original price. THERE WAS NO PRICE INCREASE THAT HOPPER WAS CLAIMING.They refused to honor their original agreement and refused to refund the $68! TOTAL SCAM AND RIP OFF

03/30/2022

I purchased the price freeze on Hopper for plane tickets going from ****** to *******. They charged me $282 to lock in the price of $403 for the flight with my understanding that the $282 would go towards the ticket when I purchased it. Their customer service informed me that it would only cover $100 towards the price increase if the ticket goes up. I was trying to exercise my price freeze to purchase the tickets for $403 and they were trying to charge me the full price not deducting the 282 I paid towards the freeze. I contacted customer support again and they informed me that if the price went up at all they would only cover $100 even though I paid $282 for the coverage apparently. I have never seen such misleading terms and conditions and fine print to a ticket purchase in my life. I will definitely never use this service again and make it a point to let everyone I know what a scam it is. All this while I was trying to visit my sister who just had a stroke and is now a quadriplegic.

28. Potential travelers expect a "price freeze" service will fully protect them from any price increases.

29. Defendant makes other representations and omissions with respect to its Price Freeze and other services which are false and misleading.

30. The value of the tickets and Price Freeze service Plaintiff bought through Hopper was materially less than its value as represented by Defendant.

31. Defendant sold more tickets and Price Freeze options at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

32. Had Plaintiff and proposed class members known the truth, they would not have bought the Price Freeze or would have paid less for it.

33. As a result of the false and misleading representations, the cost of the Price Freeze averages $28 for 12 hours of (limited) protection against price increases, excluding tax and sales, higher than similar travel protection services, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

34. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

35. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

36. Plaintiff Shalimar Acosta is a citizen of Illinois.

37. Defendant Hopper (USA), Inc. is a Delaware corporation with a principal place of business in Boston, Suffolk County, Massachusetts.

38. The class of persons Plaintiff seeks to represent includes persons who are citizens of

different states from which Defendant is a citizen.

39. The members of the class Plaintiff seeks to represent are more than 100, because Price Freeze has been available to potential travelers for several years, with the representations described here.

40. Venue is in the Eastern Division of this District because a substantial part of the events or omissions giving rise to these claims occurred in Cook County, including Plaintiff's purchase and/or use of Defendant's travel services including the Price Freeze option, and her awareness and/or experiences of and with the issues described here.

Parties

41. Plaintiff Shalimar Acosta is a citizen of Chicago, Illinois, Cook County.

42. Defendant Hopper (USA), Inc. is a Delaware corporation with a principal place of business in Boston, Massachusetts, Suffolk County.

43. Defendant's registered agent in its state of incorporation is Incorporating Services, Ltd., 3500 S DuPont Hwy Dover DE 19901.

44. Defendant's registered agent in its state of principal place of business is Incorporating Services, Ltd., 44 School St Ste 505 Boston MA 02108.

45. Hopper was founded in 2007 by former high level executives at leading travel aggregator Expedia.

46. This experience was a significant factor raising almost $600 million from Silicon Valley venture capitalists.

47. Hopper sought to apply its extensive knowledge and insights of the travel industry to meet the needs of today's travelers.

48. Using unique knowledge of the travel industry which revealed one of the most hated

aspects of travel was the up-and-down prices of airline flights, Hopper introduced its "Price Freeze" in November 2019.

49. The Hopper app has been downloaded over 71 million times and its website is one of the most visited amongst travel sites.

50. Reports estimate annual revenue close to $65 million with a valuation exceeding $3.5 billion.

51. Plaintiff used Hopper and paid for flights and/or Price Freeze on one or more occasions within the statutes of limitations for each cause of action alleged, between May 2022 and June 2022, and/or among other times.

52. Plaintiff believed and expected that Price Freeze provided complete protection from price increases for a set duration, because that is what the representations and omissions said and implied in marketing and advertising and the absence of any references or statements elsewhere.

53. Plaintiff relied on the words, "Price Freeze," and its common understanding as described here.

54. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, and/or images, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the booking and Price Freeze options, through digital, audio, and print marketing.

55. Plaintiff bought the tickets and/or Price Freeze protection at or exceeding the above-referenced price.

56. Plaintiff would not have purchased the tickets and/or Price Freeze protection if she knew the representations and omissions were false and misleading or would have paid less.

57. Plaintiff chose between booking a flight and obtaining flight price protection from

Hopper and other companies which offered similar options, but which did not misrepresent their attributes, requirements, instructions, and/or features.

58. The tickets and/or Price Freeze protection was worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

59. Plaintiff intends to, seeks to, and will purchase tickets and/or Price Freeze protection again from Hopper when she can do so with the assurance Price Freeze will provide price protection for any increase in the price of the flights.

60. Plaintiff is unable to rely on the representations not only of tickets and/or Price Freeze protection from Hopper, but other similar booking and price freeze tools, because she is unsure whether those representations are truthful.

Class Allegations

61. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased tickets and/or Price Freeze protection from Hopper during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Iowa, Arkansas, Wyoming, North Dakota, Delaware, Indiana, Georgia, New Mexico, Mississippi, Tennessee, Virginia, Maine, Nebraska, Alaska, Idaho, West Virginia, and Utah who purchased tickets and/or Price Freeze protection from Hopper during the statutes of limitations for each cause of action alleged.

62. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

63. Plaintiff's claims and basis for relief are typical to other members because all were

subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

64. Plaintiff is an adequate representative because her interests do not conflict with other members.

65. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

66. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

67. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

68. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, *et seq.*

(Consumer Protection Statute)

69. Plaintiff incorporates by reference all preceding paragraphs.

70. Plaintiff believed Hopper's Price Freeze fully protected her from any price increases for a provided length of time.

71. Defendant's false, misleading, and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

72. Defendant misrepresented its Price Freeze through statements, omissions, ambiguities, half-truths and/or actions.

73. Plaintiff relied on the representations and omissions to believe Price Freeze fully protected travelers from any price increases for a provided length of time.

74. Plaintiff and class members would not have purchased tickets and/or Price Freeze or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

75. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

76. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

77. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

78. As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

79. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

80. The tickets and Price Freeze were identified, distributed, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that they fully protected travelers from any price increases for a provided length of time.

81. Defendant directly marketed tickets and Price Freeze to Plaintiff and consumers through its advertisements and marketing, through various forms of media and within its website and mobile app, product descriptions, and targeted digital advertising.

82. Defendant knew the attributes that potential customers like Plaintiff were seeking

and developed its marketing and advertising to directly meet those needs and desires.

83. Defendant's representations about the tickets and Price Freeze were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it fully protected users from any price increases for a provided length of time.

84. Defendant's representations affirmed and promised that Price Freeze fully protected users from any price increases for a provided length of time.

85. Defendant described Price Freeze so Plaintiff and consumers believed it fully protected users from any price increases for a provided length of time, which became part of the basis of the bargain that it would conform to its affirmations and promises.

86. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of Price Freeze.

87. This duty is based on Defendant's outsized role in the market for this type of innovative travel protection service, as a leading and cutting-edge travel services provider.

88. Plaintiff recently became aware of Defendant's breach of the Price Freeze's warranties.

89. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

90. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with Price Freeze.

91. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

92. The Price Freeze service did not conform to its affirmations of fact and promises due

to Defendant's actions.

93. Price Freeze was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made in marketing or advertising, because it was marketed as if it fully protected users from any price increases for a provided length of time.

94. Price Freeze was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiff, because she expected it fully protected users from any price increases for a provided length of time, and she relied on Defendant's skill and judgment to select or furnish such a suitable travel savings product.

95. Plaintiff and class members would not have purchased Price Freeze or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

96. Defendant had a duty to truthfully represent Price Freeze, which it breached.

97. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, an innovative and trusted company, known for its travel savings tools, without the "fine print" of its competitors.

98. Defendant's representations and omissions regarding Price Freeze went beyond the specific representations made in marketing and advertising, as they incorporated the extra promises and commitments to transparency and putting customers first that it has been known for.

99. These promises were outside of the standard representations that other companies may make in a standard arms-length context.

100. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

101. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of Price Freeze when purchasing tickets.

102. Plaintiff and class members would not have purchased Price Freeze or paid as much if the true facts had been known, suffering damages.

Fraud

103. Defendant misrepresented and/or omitted the attributes and qualities of Price Freeze, that it fully protected users from any price increases for a provided length of time.

104. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

105. Defendant knew of the issues described here yet did not address them.

106. Defendant's fraudulent intent is evinced by its knowledge that Price Freeze was not consistent with its representations.

Unjust Enrichment

107. Defendant obtained benefits and monies because Price Freeze was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the

challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: July 31, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com