# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Shalimar Acosta, individually and on behalf of all others similarly situated, | 1:22-cv-03974 |
| Plaintiff, | |
| - against - | Hon. Sara L. Ellis |
| Hopper (USA), Inc., | |
| Defendant | |

Plaintiff's Memorandum of Law in Opposition to
Defendant's Motion to Dismiss the Complaint

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................................... iii

INTRODUCTION .......................................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 1

LEGAL STANDARDS .................................................................................................................. 2

ARGUMENT .................................................................................................................................. 2

I. PLAINTIFF'S CLAIMS ARE PLAUSIBLE AND VIABLE ........................................... 2

    A. Allegations Establish that "Price Freeze" is Misleading ......................................... 2

    B. Plaintiff Suffered Actual Damages ........................................................................... 5

II. PLAINTIFF HAS STANDING TO PURSUE NON-ILLINOIS CLAIMS ....................... 7

III. PLAINTIFF'S WARRANTY AND COMMON LAW CLAIMS SATISFY THE ELEMENTS ........................................................................................................... 7

    A. Breaches of Express and Implied Warranty are Established ................................. 7

    B. Warranty Claims Support MMWA Violation ........................................................... 8

    C. Special Relationship Supports Negligent Misrepresentation ................................. 8

    D. The Complaint Exceeds Particularity Requirements for Fraud ............................. 8

    E. Unjust Enrichment is Viable ...................................................................................... 9

IV. PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF ................................. 9

CONCLUSION ............................................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**

*Am. Home Prods. Corp. v. FTC*,
   695 F.2d 681 (3d Cir. 1982) .................................................................................................. 5

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................................... 7

*Arazie v. Mullane*,
   2 F.3d 1456 (7th Cir. 1993) .................................................................................................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................... 2

*Baldwin v. Star Sci., Inc.*,
   78 F. Supp. 3d 724 (N.D. Ill. 2015) ....................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................... 2

*Benson v. Fannie May Confections Brands, Inc.*,
   944 F.3d 639 (7th Cir. 2019) .................................................................................................. 6

*Bonahoom v. Staples, Inc.*,
   No. 20-cv-1942, 2021 WL 1020986 (N.D. Ill. Mar. 17, 2021) .............................................. 8

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
   761 F.3d 732 (7th Cir. 2014) .................................................................................................. 6

*Cleary v. Philip Morris Inc.*,
   656 F.3d 511 (7th Cir. 2011) .................................................................................................. 9

*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*,
   636 N.E.2d 503 (1994) ........................................................................................................... 8

*Curtis v. 7-Eleven, Inc.*,
   No. 21-cv-6079, 2022 WL 4182384 (N.D. Ill. Sept. 13, 2022) ............................................. 7

*Freeman v. MAM USA Corp.*,
   528 F. Supp. 3d 849 (N.D. Ill. 2021) ..................................................................................... 2

*Hayes v. Gen. Mills, Inc.*,
   No. 19-cv-05626, 2021 WL 3207749 (N.D. Ill. July 29, 2021) ............................................ 5

*In re Bristol-Myers Co.*,
   85 F.T.C. 688 (1975) .............................................................................................................. 5

*McDonnell v. Nature's Way Prod., LLC*,
  No. 16-cv-5011, 2017 WL 1149336 (N.D. Ill. Mar. 28, 2017) ............................................... 7

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
  91 Ill. 2d 69 (1982) ................................................................................................................ 8

*Phillips v. DePaul Univ.*,
  19 N.E.3d 1019 (Ill. App. Ct. 2014) ....................................................................................... 2

*Reck v. Wexford Health Sources, Inc.*,
  27 F.4th 473 (7th Cir. 2022) ............................................................................................... 7, 9

*Robinson v. Toyota Motor Credit Corp.*,
  201 Ill. 2d 403 (2002) ............................................................................................................ 5

*Rudy v. Fam. Dollar Stores, Inc.*,
  583 F. Supp. 3d 1149 (N.D. Ill. 2022) ................................................................................... 6

*Steinberg v. Chicago Med. Sch.*,
  69 Ill. 2d 320 (1977) .............................................................................................................. 6

*Wigod v. Wells Fargo Bank, N.A.*,
  673 F.3d 547 (7th Cir. 2012) ................................................................................................. 6

*Windy City v. CIT Tech. Fin. Servs., Inc.*,
  536 F.3d 663 (7th Cir. 2008) ................................................................................................. 6

**Statutes**

15 U.S.C. § 2301(6)(A) ................................................................................................................. 8

810 ILCS 5/2-313(1)(a) ................................................................................................................. 7

810 ILCS 5/2-314(2)(a) ................................................................................................................. 8

810 ILCS 5/2-314(2)(c) ................................................................................................................. 7

815 ILCS 505/1 ............................................................................................................................. 1

815 ILCS 505/2 ............................................................................................................................. 5

**Rules**

Fed. R. Civ. P. 8(d)(2) ................................................................................................................... 9

Fed. R. Civ. P. 9(b) ....................................................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 2

**Other Authorities**

FTC Statement on Deception,
    103 F.T.C. 174 (1984)............................................................................................................... 5

## INTRODUCTION

Plaintiff Shalimar Acosta ("Plaintiff") submits this Memorandum of Law in Opposition to the Motion by Hopper (USA), Inc. ("Defendant") to Dismiss the Complaint ("Compl."). ECF No. 1.

Plaintiff brings claims for damages for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, and the consumer protection laws of Alaska, Arkansas, Delaware, Georgia, Idaho, Indiana, Iowa, Maine, Mississippi, Nebraska, New Mexico, North Dakota, Tennessee, Utah, Virginia, West Virginia, and Wyoming, Compl. ¶¶ 69-79, breaches of warranty, Compl. ¶¶ 80-95, and common law claims, Compl. ¶¶ 96-107, on behalf of consumers who purchased Defendant's travel savings service known as "Price Freeze" (the "Service"). Compl. ¶ 1. Plaintiff seeks monetary and injunctive relief, expenses, and reasonable attorneys' fees. Compl. at 18-19, Prayer for Relief, ¶¶ 2-6.

Defendant argues that the Complaint should be dismissed because, among other reasons, she has not alleged any facts in support of the allegations. ECF No. 12, Defendant's Memorandum of Law in Support of its Motion to Dismiss ("Def. Mem.") at 5. None of its arguments are a basis for dismissal and its Motion should be denied.

## FACTUAL BACKGROUND

Defendant sells "travel savings products and services from its eponymous website and mobile application such as 'Price Freeze.'" Compl. ¶ 1. Even though consumers believe the Service "fully protects them from any price increases for a provided length of time," it "fails to cover the full price difference when the price of a flight increases beyond a pre-determined amount." Compl. ¶¶ 4, 18. Had Plaintiff known that the Service did not "fully protect [her] from any price increases," she "would not have bought the Price Freeze or would have paid less for it." Compl. ¶¶ 28, 32.

## LEGAL STANDARDS

To proceed beyond a motion made pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

**I.     PLAINTIFF'S CLAIMS ARE PLAUSIBLE AND VIABLE**

To demonstrate a "deceptive act or practice" under the ICFA, a plaintiff must "allege conduct that plausibly could deceive a reasonable consumer." *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1031 (Ill. App. Ct. 2014). A practice "is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 862 (N.D. Ill. 2021).

**A.     Allegations Establish that "Price Freeze" is Misleading**

Defendant argues that "Plaintiff does not allege any facts" in support of her allegations, because it "[n]ever represented, anywhere, that its Price Freeze service covers the 'full' or 'complete' increase in the price of a flight beyond a predetermined amount." Def. Mem. at 5.

However, this ignores that the Service "tells consumers it fully protects them from any price increases," i.e., "Price Freeze helps you *stay safe from price increases*," "look for the Price Freeze button and pay a small fee to *lock in the price*," and "[o]nce you've *frozen the price*, you can relax knowing you *locked in your price*." Compl. ¶¶ 2-5 (emphasis added).

In fact, a price freeze is defined as "a situation in which prices, or the price of a particular product, are fixed at a particular level, and *no increases are allowed*." Compl. ¶ 17 citing Cambridge Dictionary (emphasis added).

2

That "the Hopper mobile app clearly and prominently disclosed and explained" that it would not provide full credit for price increases," is contradicted by the assurances that "[i]f the price goes up, Hopper covers the price increase," and "[i]f the price increases, you'll pay the price *you see now*." Def. Mem. at 5; Compl. ¶¶ 6, 16 (emphasis added).

It can be hardly said that its purported disclaimer is "clearly and prominently disclosed," when potential travelers would only learn that "Price Freeze fails to cover the full price difference" if they "click[ed] the circled 'i' next to '[b]uy now, pay later' or '[m]ore [i]nformation' under the other Price Freeze description." Def. Mem. at 5; Compl. ¶¶ 18-19.

If users decided to visit one of these webpages, which is not required to sign up for the Service, "a 'How Price Freeze Works' info page [appears] for potential travelers who are '[w]orried this price will go up [] [or] [n]eed more time to decide,' allowing them to '[f]reeze the price right where it's at!'" Compl. ¶ 20.

That Plaintiff "does not allege that these various 'more information' links were obscured, confusing, or minimized," ignores that the "Service Cap" is described in "fine print terms," and is only "made clear and [] stated on the confirmation email" after purchase was made, meaning "[n]owhere throughout the flight selection process are travelers put on notice of the limitations." Def. Mem. at 5; Compl. ¶¶ 24-26.

While Defendant may be correct that the "How Price Freeze Works" screen "explains that if the flight price increases, Hopper covers the cost of the price increase [only] up to $100 per traveler," nothing about the user interface indicates that consumers will actually view these disclaimers, and consumer feedback has indicated that the practices are in fact misleading. Def. Mem. at 6; Compl. ¶ 26-27.

3

Price Freeze purchasers expected it would "fully protect them from any price increases," "have complained about the opaque and non-disclosed limitations of the [Service] on websites including TripAdvisor and the Better Business Bureau ('BBB')." Compl. ¶¶ 27-28.

One user on TripAdvisor, in a post from August 15, 2021, explained that he "felt comforted by the Hopper 'we got your back guarantee," and was "only giv[en] 100 dollars [] towards the increase," even though the "tickets went up almost three hundred dollars," which resulted in the user "play[ing] right into the scam" by losing both the tickets and his deposit. Compl. ¶ 27.

Another user highlighted the differences between domestic and international flights – with the latter being far more expensive, and more prone to price changes higher than $100 – pointing out that her ticket was "frozen" at $587, but was asked "to pay nearly $1,000, even when the airline [she] bought the ticket from [was] selling it for $606." Compl. ¶ 27.

A third post, dated March 29, 2022, explained that after being told by Defendant he was "required to pay [] several hundred dollars more" than his frozen price, the traveler was able to "book[] [the] original flight with [the Airline] at the exact same original price," meaning "there was no price increase that hopper was claiming." Compl. ¶¶ 27.

As another user correctly pointed out, "I have never seen such misleading terms and conditions and fine print to a ticket purchase in my life," which is fair considering that several individuals were able to purchase their tickets at the "frozen" price directly from the airline, but not from Defendant. Compl. ¶ 27.

That Plaintiff has "fail[ed] to allege facts that 'plausibly could deceive a reasonable consumer'" ignores that she and numerous other users were deceived by Hopper's "misleading terms and conditions and fine print," and that "[a] material practice [need only] mislead[] a significant *minority* of reasonable consumers [to be] deceptive." Def. Mem. at 7 citing *Hayes v.*

4

*Gen. Mills, Inc.*, No. 19-cv-05626, 2021 WL 3207749, at *2 (N.D. Ill. July 29, 2021); FTC Statement on Deception, 103 F.T.C. 174, 175 n.20 (1984) ("Deception Policy Statement") (emphasis added).

Since the ICFA "mandates that 'consideration shall be given to the interpretations of the FTC and the federal courts relating to Section 5(a) of the [FTC] Act,'" it is noteworthy that the FTC has found conduct deceptive where as little as fourteen percent of the public was misled. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 412 (2002) quoting 815 ILCS 505/2; *In re Bristol-Myers Co.*, 85 F.T.C. 688, 745 (1975) (deception found where 14 to 33% of consumers understood advertisement to mean that "Dry Ban" deodorant 'went on dry'); *Am. Home Prods. Corp. v. FTC*, 98 F.T.C. 136, 393-94 (deception found where 22% of viewers concluded that seller's over-the-counter drug relieved tension), *aff'd as modified*, 695 F.2d 681 (3d Cir. 1982).

Defendant's contention that Plaintiff "accessed, viewed, [or] read this 'How Price Freeze Works,' page prior to purchase" should not be credited because this would require disregarding the Complaint's allegations and is unsupported by evidence in admissible form. Def. Mem. at 6; Compl. ¶ 52.

B.     <u>Plaintiff Suffered Actual Damages</u>

Defendant's assertion, that "the Complaint [] fails to allege the basic fact that Plaintiff actually purchased a Hopper Price Freeze" is directly contradicted by her allegation that she "used Hopper and paid for flights and/or Price Freeze on one or more occasions," "between May 2022 and June 2022." Def. Mem. at 7; Compl. ¶ 51.

As "the service inherently can only be purchased and used prior to a flight booking," the allegation that Plaintiff "paid for flights and/or Price freeze on one or more occasions" does not mean that she "only purchased a flight," but that she purchased the Service "prior to a flight

5

booking." Def. Mem. at 7-8 citing *Steinberg v. Chicago Med. Sch.*, 69 Ill. 2d 320, 328 (1977) and *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014); Compl. ¶¶ 51, 55.

Defendant lastly argues that Plaintiff fails to allege that she "was induced to purchase any product or service by the alleged deceptive omissions of Hopper, and further fails to allege facts that [she] suffered any injury or damages." Def. Mem. at 8.

However, Plaintiff need not allege reliance for her ICFA claims to proceed, because the statute distinguishes "deceptive [] from unfair conduct," with the latter having "no fraud element and therefore [is] not subject to a heightened pleading standard." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012).

The "Price Freeze" representations are "covered by the ICFA's 'unfair acts' prohibition," because consumers "expected [this] w[ould] fully protect them from any price increases," and "fail[ing] to cover the full price difference" "offends public policy [and] is immoral [and] unethical." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019); Compl. ¶¶ 18, 28.

By alleging that "[t]he description of Price Freeze tells consumers it fully protects them from any price increases for a provided length of time," when this statement is false, Plaintiff has "aver[red] facts that, if proven, make relief more than merely speculative." *Windy City v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 672 (7th Cir. 2008); Compl. ¶ 4.

Plaintiff's claims fit squarely within what other courts have permitted "where, as here, [she] claimed that [D]efendant misled her as to the nature of the [Service] she was buying, and she either paid more [] than she otherwise would have or would not have purchased [it] had she known the truth." *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1165 (N.D. Ill. 2022).

6

Plaintiff alleged that she "would not have bought the Price Freeze or would have paid less" had she known the Service would not "fully protect [her] from any price increases," which is "enough [at this stage] to state a claim that [she] suffered actual damages." *Curtis v. 7-Eleven, Inc.*, No. 21-cv-6079, 2022 WL 4182384, at *18 (N.D. Ill. Sept. 13, 2022); *see also McDonnell v. Nature's Way Prod., LLC*, No. 16-cv-5011, 2017 WL 1149336, at *3 (N.D. Ill. Mar. 28, 2017) (affirming "'relatively bare-bones' allegations that [plaintiff] 'paid more for the products than they were actually worth'" was sufficient to show damages).

## II. PLAINTIFF HAS STANDING TO PURSUE NON-ILLINOIS CLAIMS

Even though Defendant "fail[ed] to address" Plaintiff's Multi-State claims, which "results in waiver," any belated arguments that she lacks standing to represent citizens outside this State should be deferred, because "certification issues are [] 'logically antecedent to any standing issues.'" *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 485 n.30 (7th Cir. 2022); *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 731 (N.D. Ill. 2015) citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997).

## III. PLAINTIFF'S WARRANTY AND COMMON LAW CLAIMS SATISFY THE ELEMENTS

### A. Breaches of Express and Implied Warranty are Established

Defendant's "Price Freeze" representations constituted "affirmation[s] of fact" that it would "fully protect [consumers] from any price increases for a provided period of time," which it failed to do. 810 ILCS 5/2-313(1)(a); Compl. ¶¶ 1, 4.

Further, a breach of the implied warranty of merchantability occurs where the Service is not "fit for [its] ordinary purposes," which is why Price Freeze's inability to "fix[] [prices] at a particular level [with] no increases [] allowed" requires this claim to proceed. 810 ILCS 5/2-314(2)(c); Compl. ¶ 17.

7

The Service also could not "pass without objection in the trade" as a "Price Freeze" because it "fail[ed] to cover the full price difference when the price of a flight increases beyond a pre-determined amount." 810 ILCS 5/2-314(2)(a); Compl. ¶ 25.

### B. Warranty Claims Support MMWA Violation

Plaintiff's facts in support of her state law warranty claims support her Magnuson Moss Warranty Act ("MMWA") violation. *See Bonahoom v. Staples, Inc.*, No. 20-cv-1942, 2021 WL 1020986 at *8 (N.D. Ill. Mar. 17, 2021) (finding MMWA requirements similar to express and implied warranty).

The statement and promise of "Price Freeze" "t[old] consumers [the Service] fully protects them from any price increases for a provided length of time," is a prime example of a "defect" because it does not "cover the price increase." Compl. ¶¶ 1, 6; 15 U.S.C. § 2301(6)(A).

### C. Special Relationship Supports Negligent Misrepresentation

As "a trusted company, known for its travel savings tools without the 'fine print' of its competitors," with "special knowledge and experience," Defendant "had a [non-delegable] duty," "outside of the contract" to provide non-deceptive information, which it breached. *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 515 (1994); *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 76 (1982); Compl. ¶ 97.

### D. The Complaint Exceeds Particularity Requirements for Fraud

Plaintiff satisfied the requirements of Rule 9(b) by alleging the "who, what, where, when, and how" of the fraud. *Arazie v. Mullane*, 2 F.3d 1456, 1458 (7th Cir. 1993).

The "who" was "Hopper (USA) Inc." Compl. ¶ 42. The "what" were the representations, of "Price Freeze" and "[o]nce you've found a price you like, look for the Price Freeze button and pay a small fee to lock in the price." Compl. ¶ 1, 3. The "where" and "when" was in using

8

Defendant's mobile application "between May [] and June 2022." Compl. ¶ 77. The "how" was "cover[ing] [prices] up to [only] US $100.00/traveler in savings." Compl. ¶ 22.

E. <u>Unjust Enrichment is Viable</u>

Plaintiff's unjust enrichment claim is not a separate cause of action, which is why "fundamental principles of justice, equity and good conscience" and Fed. R. Civ. P. 8(d)(2) require both causes of action to proceed. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011).

IV. **PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF**

Plaintiff's allegations of future harm render her "unable to rely on the representations not only of tickets and/or Price Freeze protection from Hopper, but other similar booking and price freeze tools, because she is unaware whether those representations are truthful." *Reck*, 27 F.4th at 485 n.30; Compl. ¶ 60.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's Motion or in the alternative grant leave to file an Amended Complaint.

Dated: January 13, 2023

                                                      Respectfully submitted,

                                                      Sheehan & Associates, P.C.
                                                    /s/Spencer Sheehan
                                                    spencer@spencersheehan.com
                                                    60 Cuttermill Rd Ste 412
                                                    Great Neck NY 11021
                                                    Tel: (516) 268-7080

**Certificate of Service**

I certify that on January 13, 2023, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☐ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☐ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan