UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHALIMAR ACOSTA, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) ) v. ) ) Hopper (USA), Inc., ) ) Defendant. ) | No. 22 C 3974 Judge Sara L. Ellis |

**OPINION AND ORDER**

After Shalimar Acosta used Hopper (USA), Inc.'s ("Hopper") Price Freeze service and learned that Hopper would not cover the full price increase of her flight, she filed this putative class action against Hopper. Acosta brings claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, and other similar state consumer protection statutes; breaches of express warranty, implied warranty of merchantability and fitness for a particular purpose, and the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et. seq.*; negligent misrepresentation; fraud; and unjust enrichment. Hopper filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Acosta has sufficiently alleged a deceptive act under ICFA and Hopper does not independently move to dismiss Acosta's other claims, the Court denies Hopper's motion to dismiss.

**BACKGROUND[1]**

Hopper markets and sells travel savings products and services via its website and mobile application. One of its services, Price Freeze, allows consumers to put down a deposit in order to

---

[1] The Court takes the facts in the background section from Acosta's complaint and exhibits attached thereto and presumes them to be true for the purpose of resolving Hopper's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

"lock in" the price of a flight to help them "stay safe from price increases." Doc. 1 ¶ 3, 14–15. In its description of Price Freeze, Hopper tells consumers that if the price of their flight increases, "Hopper covers the price increase," and if the price of the flight decreases, consumers pay the new, lower price. *Id.* ¶ 6.

In reality, if the price of a flight increases, Hopper will cover only up to $100.00 per traveler, which they call a Service Cap. *Id.* ¶ 22. Consumers can discover the Service Cap before they use Price Freeze by clicking a "more information" link or a circled "i" link, as pictured below. *Id.* ¶ 19.



*Id.* ¶ 19. Once a consumer clicks on either of these links, Hopper directs them to a "How Price Freeze Works" page, which explains in one of five bullet points that "[i]f the flight price increases, Hopper will cover you up to US$100.00/traveler in savings." *Id.* ¶ 22.



2

*Id.*

However, Hopper does not require consumers to view this additional information in order to use Price Freeze. *See id.* ¶ 26. Hopper also conveys the Service Cap in a confirmation email after consumers use Price Freeze, *id.* ¶¶ 24–25, and somewhere on their website in "fine print," *id.* ¶¶ 23–25. Hopper users have complained about the lack of transparency with respect to Price Freeze on websites including TripAdvisor and the Better Business Bureau. For example, one Hopper user noted that he "understood that the [flight] tickets could increase in cost but felt comforted by [Hopper's] 'we got your back' guarantee," and then felt "burned" when he only received $100 toward the price increase. *Id.* ¶ 27. Another stated that after he bought his ticket, he learned that "Hopper isn[']t actually even freezing the price," but instead "will only pay for $100 of price increase." *Id.* He added that "[t]he claim of Price Freeze is false, and needs to be changed." *Id.* Other Hopper users have made similar complaints. *Id.*

Acosta, an Illinois resident, used Hopper to pay for flights and/or Price Freeze on one or more occasions between May and June 2022. Acosta read and relied on the words "Price Freeze" and descriptions thereof in deciding to purchase tickets and/or Price Freeze. Acosta believed and expected that Price Freeze would provide "complete protection" from price increases for a set period of time due the representations and omissions in Hopper's advertising. *Id.* ¶ 52.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's

favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. ICFA Claim

Acosta brings a claim under ICFA, "a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegal v. GEICO Cas. Co.*, 523 F. Supp. 3d 1032, 1041 (N.D. Ill. 2021) (quoting *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019)). To state an ICFA claim, Acosta must allege (1) a deceptive or unfair act or practice by Hopper, (2) Hopper's intent that Acosta rely on the deceptive or unfair practice, (3) the deceptive or unfair practice occurred during a course of conduct involving trade or commerce, and (4) Hopper's deceptive or unfair practice proximately caused Acosta actual damage. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). A deceptive practices claim must meet Rule 9(b)'s heightened pleading standard, while an unfair practices claim need not because it does not sound in fraud. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Acosta may recover for either deceptive or unfair conduct. *See Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002). Although Acosta has not made entirely clear whether she seeks to proceed with an

4

unfair or deceptive conduct claim,[2] Hopper focuses on deceptive conduct and so the Court will do the same.[3]

Hopper makes two primary arguments in support of its motion to dismiss. First, Hopper argues that Acosta's ICFA claim fails because Hopper clearly discloses that it will only cover up to $100 in the event of a price increase, and therefore Acosta cannot show deceptive conduct. Second, Hopper contends that Acosta has failed to allege that she suffered damages sufficient to state an ICFA claim. The Court addresses these arguments in turn.

### A.     Deception

As to deception, "a practice is deceptive if it creates a likelihood of deception or has the capacity to deceive" a reasonable consumer. *Benson*, 944 F.3d at 646 (citation omitted) (internal quotation marks omitted). "[W]hen analyzing a claim under the ICFA, the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005). "Because courts take a 'practical and fact-intensive approach to consumer behavior,'" how reasonable consumers would interpret a statement "is usually a question of fact not resolved on a motion to dismiss." *Acosta-Aguayo v.*

---

[2] Acosta begins her response brief with a statement of law regarding what constitutes a deceptive practice, suggesting that she seeks to allege deception under ICFA. Acosta continues by citing cases and Federal Trade Commission decisions that describe deceptive practices, reinforcing the Court's understanding. However, later in her brief, in response to Hopper's argument that Acosta failed to allege inducement, Acosta contends that she need not allege reliance because her allegations relate to Hopper's unfair practices, rather than deceptive ones. *See* Doc. 14 at 6 ("The Price Freeze representations are covered by the ICFA's unfair acts prohibition, because consumers expected this would fully protect them from any price increases, and failing to cover the full price difference offends public policy and is immoral and unethical." (citations omitted) (internal quotations marks omitted) (alterations omitted)). For clarity's sake, the Court notes that Acosta need not allege reliance under ICFA, regardless of whether her claim arises from unfair or deceptive conduct. *See, e.g.*, *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 576–77 (7th Cir. 2001) (affirming dismissal of common law fraud claim because the plaintiff could not show it relied on oral representations different from contract terms, while allowing the ICFA claim to proceed past motion to dismiss based on the same facts because reliance is not a required element of an ICFA claim).

[3] The Court's analysis here does not foreclose Acosta from pursuing an unfair practices claim in the future.

*Walgreen Co.*, No. 22-CV-00177, 2023 WL 2333300, at *4 (N.D. Ill. Mar. 2, 2023) (quoting *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 478, 483 (7th Cir. 2020)).

Here, Acosta alleges that Hopper's representations encourage consumers to use Price Freeze to "[f]reeze prices" because "Price Freeze helps you stay safe from price increases while you plan your trip." Doc. 1 ¶ 2. She further alleges that Hopper tells consumers that "[o]nce you've frozen the price, you can relax knowing you locked in your price" and that "[i]f the price goes up, Hopper covers the price increase." *Id.* ¶ 5. Hopper's statements and omissions allegedly misled Acosta and other consumers, who "expect[ed] a 'price freeze' service [would] fully protect them from any price increases." *Id.* ¶ 28; *see also id.* ¶ 52 (Acosta "believed and expected that Price Freeze provided complete protection from price increases for a set duration, because that is what the representations and omissions said and implied in marketing and advertising and the absence of any references of statements elsewhere").

Hopper argues that Acosta's allegations do not suffice because, despite her statements to the contrary, Hopper never represented that its Price Freeze service covers the "full" or "complete" increase in the price of a flight beyond a predetermined amount. But that fact does not render Acosta's interpretation of Hopper's representations—for example, Hopper's representation that consumers can "relax knowing [they] locked in [their] price" and that "[i]f the price goes up, Hopper covers the price increase"—unreasonable or fanciful. *Id.* ¶ 5; *see also Bell*, 982 F.3d at 477 ("[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified."); *cf. Brodsky v. Aldi Inc.*, No. 20 C 7632, 2021 WL 4439304, at *5 (N.D. Ill. Sept. 28, 2021) (finding that "no reasonable consumer" would understand language promising "up to" a certain amount to be "a promise that the cannister will make that amount, but just that it can

under certain circumstances"). Moreover, the fact that Hopper in some places conveyed that it would only cover up to $100 dollars if a consumer's flight increased in price does not defeat Acosta's claim at this stage. Acosta makes clear in her response brief that she did not read the additional information prior to using Price Freeze, and includes in her complaint multiple statements from misled Hopper consumers. Although the Court must consider "all the information available to [Acosta] and the context in which that information is provided and used" when evaluating her deception claim, "[w]hat matters most is how real consumers understand and react to the advertising." *Bell*, 982 F.3d at 476. Here, given Acosta's allegations, the Court cannot assume at this stage that Acosta and reasonable consumers would click on a "more information" link where the website or mobile application does not require it for purchase. *See id.* ("We . . . hold[] that an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers. Many reasonable consumers do not instinctively parse every front label or read every back label before placing groceries in their carts."); *Benson*, 944 F.3d at 646–47 (7th Cir. 2019) (rejecting the defendant's argument that "information on the outside of the boxes . . . eliminates the possibility that a reasonable consumer would be deceived," reasoning that "at this stage of the litigation, we cannot conclude that the information on the boxes is enough as a matter of law to avoid a finding of deception"); *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1159–60 (N.D. Ill. 2022) (explaining that "numerous courts have rejected the idea that back-label ingredient lists can immunize defendants from suit for ambiguous front labels" and collecting cases); *cf. Washington v. Hyatt Hotels Corp.*, No. 1:19-CV-04724, 2020 WL 3058118, at *4 (N.D. Ill. June 9, 2020) (fact that the defendant "disclosed the existence and amount of the resort fees not once but twice during the booking process" and "importantly, . . . *included* the

resort fee in the itemized list of final charges a reasonable customer sees *before* reserving the room" undermined the plaintiff's claim of deception). Acosta's allegations suffice at this stage to demonstrate that Hopper engaged in deceptive conduct.

### B. Remaining ICFA Elements

Hopper next urges the Court to dismiss Acosta's complaint on the grounds that Acosta did not allege that she purchased Price Freeze, "was induced to purchase" Price Freeze, or suffered damages. Doc. 12 at 7–8. With respect to Hopper's first argument, throughout her complaint, Acosta alleges that she paid for flights "and/or" Price Freeze. *See, e.g.*, Doc. 1 ¶¶ 51, 55–56. Hopper contends that because Acosta may only have purchased a flight and not Price Freeze, she may not bring a claim against Hopper regarding its Price Freeze service.[4] If Acosta did not in fact use the Price Freeze service, the Court agrees with Hopper that Acosta could not maintain a claim. *See Kim*, 598 F.3d at 365 ("A private party . . . must show actual damage in order to maintain an action under the ICFA." (citation omitted) (internal quotation marks omitted)). However, in her response brief, Acosta clarifies that she purchased Price Freeze prior to booking a flight. Doc. 14 at 5. The Court will consider this statement as an elaboration on and consistent with the allegations in Acosta's complaint. *See Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) ("Materials or elaborations in appellants' brief opposing dismissal may be considered, so long as those materials or elaborations are consistent with the pleadings." (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012))). Drawing all reasonable inferences in Acosta's favor, the Court assumes Acosta did in fact make use of Hopper's Price Freeze service.

---

[4] Hopper also notes that its own records do not evince Acosta's purchase of Price Freeze or any flight, but the Court cannot consider this information, which appears nowhere in Acosta's complaint, at this stage in the proceedings. *See Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018) ("Generally, a district court cannot consider evidence outside the pleadings to decide a motion to dismiss without converting it into a motion for summary judgment.").

With respect to inducement, Hopper devotes only one sentence to its argument: "Plaintiff's Complaint fails to allege facts that Plaintiff was induced to purchase any product or service by the alleged deceptive omissions of Hopper." Doc. 12 at 10. As a threshold matter, the Court reiterates that under ICFA, a plaintiff need not allege that she relied on a deceptive act or the defendant's intent to deceive, but only that the defendant intended that the plaintiff rely on the act. *Wigod*, 673 F.3d at 575 ("[A] claim for deceptive business practices under [ICFA] does not require proof of intent to deceive. It is enough to allege that the defendant committed a deceptive or unfair act and intended that the plaintiff rely on that act." (citation omitted) (internal quotation marks omitted)). Here, Acosta alleges that "Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct," Doc. 1 ¶ 77, and that Hopper "encourage[s] prospective customers to rely on Price Freeze to 'Freeze Prices, book when you're ready' because 'Price Freeze helps you stay safe from price increases while you plan your trip,'" *id.* ¶ 2. At this stage, her allegations suffice to show that Hopper intended that Acosta and consumers rely on its representations. *See Siegal*, 523 F. Supp. 3d at 1043 ("GEICO certainly intended that consumers rely on the GEICO Giveback program in deciding to purchase or renew a policy, which is the very purpose of corporate promotions."); *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 865 (N.D. Ill. 2021) (finding the plaintiff alleged "a plausible inference of intent" where he "alleged that MAM seeks to convince consumers to buy its products based on its advertising campaign around their safety and benefits for children").

Acosta has also sufficiently alleged damages. To state an ICFA claim, a plaintiff must allege "actual pecuniary loss." *Kim*, 598 F.3d at 365 (citation omitted) (internal quotation marks omitted). "[A]ctual loss may occur if the seller's deception deprives the plaintiff of the benefit of her bargain by causing her to pay more than the actual value of the property." *Id.* (citation

9

omitted) (internal quotation marks omitted). Here, Acosta alleges that she paid more than the value of Price Freeze. *See* Doc. 1 ¶ 30 ("The value of the tickets and Price Freeze service Plaintiff bought through Hopper was materially less than its value as represented by Defendant."). She further alleges that Price Freeze costs more than similar travel protection services, *id.* ¶ 33, that she "would not have purchased the tickets and/or Price Freeze protection if she knew the representations and omissions [regarding Price Freeze] were false and misleading or would have paid less," *id.* ¶ 56, that she "chose between booking a flight and obtaining flight price protection from Hopper and other companies which offered similar options, but which did not misrepresent their attributes," *id.* ¶ 57, and that "[t]he tickets and/or Price Freeze protection was worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions," *id.* ¶ 58. Acosta's allegations regarding the value of Price Freeze as compared to other services on the market and her decision to purchase Price Freeze based on Hopper's alleged deception suffice at this stage to suggest she suffered actual damages. *See Curtis v. 7-Eleven, Inc.*, No. 21-CV-6079, 2022 WL 4182384, at *18 (N.D. Ill. Sept. 13, 2022) ("Curtis alleges that she would not have purchased the 24/7 Life products—or would have paid less for them—if she had known that the items were not recyclable. That's enough to state a claim that Curtis suffered actual damages."); *Rudy*, 583 F. Supp. 3d at 1160 (explaining that "[n]umerous courts have permitted ICFA claims to proceed where, as here, a plaintiff claimed that defendant misled her as to the nature of the product she was buying, and she either paid more for the product than she otherwise would have or would not have purchased the product had she known the truth" and collecting cases); *cf. Kim*, 598 F.3d at 365 (plaintiffs failed to allege damages where they did not allege the clothing they purchased "was defective or

10

worth less than what they actually paid" or "that, but for [the defendant's] deception, they could have shopped around and obtained a better price in the marketplace").

## II.     Remaining Claims

Acosta also brings various common law claims and claims under other consumer protection statutes.  Hopper does not move to independently dismiss any of these claims; rather Hopper asserts that "[b]ecause Plaintiff's Complaint fails to allege facts that Plaintiff was induced to purchase any product or service by the alleged deceptive omissions of Hopper, and further fails to allege facts that Plaintiff suffered any injury or damages, all of the claims of Plaintiff's Complaint should be dismissed for failure to state a claim." Doc. 12 at 10.  Hopper does not develop any additional arguments for dismissing Acosta's other claims and the Court will not make arguments on its behalf.  *See Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) ("It is not the court's responsibility to research the law and construct the parties' arguments for them.").  Therefore, Acosta's remaining claims, which arise from the same allegations as her ICFA claim, survive alongside her ICFA claim.  *See Hayes v. Gen. Mills, Inc.*, No. 19-CV-05626, 2021 WL 3207749, at *4 (N.D. Ill. July 29, 2021) (finding that because the plaintiff adequately alleged deceptive conduct under ICFA and his "claims for common law fraud, unjust enrichment, and breach of express warranty" arose from the "same allegedly misleading conduct as his ICFA claim," the plaintiff "also adequately stated a claim for relief as to his common law claims"); *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.").

11

## CONCLUSION

For the foregoing reasons, the Court denies Hopper's motion to dismiss [12].

Dated: April 25, 2023

_____
SARA L. ELLIS
United States District Judge